## Michael Culliver v. Jean P. Berge and another.

A recognition, by the principal, of a deed executed by an agent whose procuration has been lost or mislaid, renders the deed valid *ab initio ;* and where it sets forth the tenor of the original conveyance, the production of the latter will be unnecessary. So, where the act of recognition emanates from a public officer, the successor of the one, who, in his official character, was authorized to make the original deed.

The act of Congress of the 3rd of March, 1819, authorizing the sale of certain military sites, did not confer an authority personal to the Secretary of War then in office; the power conferred was given to the Department of War, to be exercised under the discretion of the President of the United States. Nor is it material whether the acts authorized by it, were executed by the Secretary himself, or by some officer acting under his authority.

It will not be presumed that an act of one of the Executive Departments, was performed without the concurrence of the President; and his directions in the premises, or ratification of the act, need not be shown. In the performance of his constitutional duty to see that the laws are executed, the President acts generally through the Executive Departments; and the acts of these Departments must be considered as his.

An exchange of a military site for other land, is valid as a sale, under the act of the 3rd of March, 1819, authorizing the sale of certain military sites. An exchange is, in effect, but a double sale.

THE plaintiff has appealed from a judgment of the District Court of East Baton Rouge, *Johnson,* J., in favor of Esther Minville, one of the defendants, and the lessor of Berge, quieting her in the possession of the property in controversy.

BULLARD, J. This case has been twice before this court, and on the last occasion was remanded in order to enable the plaintiff to furnish legal evidence of the authority of Captain Rogers to convey the land in controversy to Hall, under whom he holds. See 13 La. 137.*

On the last trial, the plaintiff produced an instrument, executed by the late Secretary of War, bearing date the 2d of May, 1840, in which it is recited, that instructions had been sent from the Quarter Master General, in 1819, by order of the then Secretary of War, authorizing Captain Thomas S. Rogers, then an Assistant Deputy Quarter Master General, to exchange a part of the land of the United States occupied as a military site in the parish of East Baton Rouge, for other land adjoining; that it appears that in pursuance of said authority, the said Rogers had entered into a deed or act of exchange, which is set forth at full length as it existed of record in the office of the parish judge; that the power of attorney referred to in said act of exchange, was afterwards withdrawn from the office of the parish judge; therefore the Secretary, in consideration of the premises, and by the authority of the act of Congress of the 3d of March, 1819, recognizes the sale and exchange set forth in said deed as having been duly authorized, and ratifies and confirms the same in every particular, so far as it regards said Rogers, except as to warranty, &c.

Such a recognitive act, in case of an individual, would supply the only defect in the deed made by an agent, whose procuration had been lost or mislaid. It would be an acknowledgment of such authority by the only person having an interest to contest it, and would without doubt render the deed valid *ab initio.* It would be regarded as a recognitive act, or *certa scientia,* setting forth the tenor of the primordial title, and consequently dispensing with the production of its original. Pothier Ob. No. 743. How is it

---

*This case is reported in 11 La. p. 88, and in 13 La. p. 137, under the title of *Culliver* v. *Garris et al.*

Culliver *v.* Berge and another.

different, when the recognitive act emanates from a public officer, the successor of him who, in his official character, was authorized make the original contract? Let it be observed here, that in the case of a natural person, if he were shown to be in the possession and enjoyment of the thing given in exchange, it would go far towards proving the authority to make the exchange in the agent, and would amount perhaps to a ratification. The act of Congress did not confer an authority, personal to the then Secretary of War. It was given to that Executive Department, under the direction of the President of the United States, and the only difficulty which the case ever presented, consists in the want of proof that Rogers was empowered by that Department to make the sale or exchange. It does not appear that the act of Congress in question has been repealed, and consequently the present Secretary of War possesses the power, originally granted to his predecessors, to dispose of certain military sites; and we see no good reason to doubt the va- lidity of an act, within the sphere of that authority, which he acknowledges was done by the Department through its agent, when the functionary thus ratifying the act, still has the power to make the contract, if it had not been done before. This recognitive act therefore, in our opinion, supplies the defect of evidence on the former trials of this case, and especially on the last, when an ex- tract of a letter from the Quarter Master General to Captain Rogers was produced, certified *upon honor*, which we did not regard as sufficient legal evidence. It was neither sworn to, nor officially certified by the head of the Department.

But it is contended that the Secretary of War alone had autho- rity to sell, under the direction of the President, and that the conveyance to Hall was not a sale, and does not appear to have been done by the Secretary, nor with the sanction of the President. We do not consider it material whether the act was done by the Secretary himself, or by some officer acting under his authority. If it was considered that the duty of executing the will of Con- gress relating to military sites, belonged more appropriately to that branch of the War Department administered by the Quarter Master General, we see no objection to it; nor can we presume that the Executive Department, acting under the express authority of an act of Congress, has acted without the concurrence of the

President of the United States; and his direction in the premises, or his ratification of the contract, need not, in our opinion, be shown. It is well known that the President, in the performance of his constitutional duty to see that the laws are executed, acts generally through the Executive Departments; and the acts of those Departments are considered as emanating from the President.

The objection that the act of Congress authorized a sale, and not an exchange, has not much weight. An exchange is nothing more, in effect, than a double sale. In the case now before us it does not appear to us material, whether the price in money was paid into the Treasury, or the property, received as an equivalent, appropriated and employed for the public service. In either case, there is a disposition of a part of the domain for a legal considera- tion: and the government appears to be in the enjoyment of the ground received in exchange. Under these circumstances, we are compelled to consider the United States as having parted with its title, at the time that the defendant's patent was obtained, and that the latter confers no right, so far as the plaintiff is concerned; and that he is entitled to recover the lot in controversy.

The judgment of the District Court is therefore annulled; and it is further ordered that the plaintiff recover the lot of land des- cribed in his petition, with costs in both courts.

*Elam*, for the appellant.

*R. N. Ogden* and *A. N. Ogden*, for the defendants.